IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEN DIEFFENBACH and JENNIFER : No. 4:23cv1427
GAMMAGE, individually and on :
behalf of all other similarly situated, : (Judge Munley)
                      Plaintiffs :
: CLASS ACTION
          v. :
:
:
UPGRADE, INC., :
            Defendant :

## MEMORANDUM

Before the court for disposition is Defendant Upgrade Inc.'s motion to dismiss and to compel individual arbitration in this case involving allegations of usury and a "rent-a-bank" scheme. The parties have briefed their respective positions and the matter is ripe for disposition.

**Background[1]**

The Commonwealth of Pennsylvania has several laws which prohibit annual loan interest rates exceeding 6%. (Doc. 1, ¶¶ 1-2). According to the complaint, Defendant Upgrade, Inc. is a non-bank corporation which routinely

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

issues loans to Pennsylvania consumers which exceed Pennsylvania's 6% cap on interest and fees.  (Doc. 1, Compl. ¶ 6).  Upgrade pays another entity, Cross River Bank, to identify itself as the lender for these loans.  (Id. ¶ 6).  Cross River Bank has no actual involvement in the Upgrade-issued loans aside from renting its name to Upgrade.  (Id. ¶ 6).

Upgrade offers loans exclusively through a website, www.upgrade.com. (Id. ¶ 54).  Upgrade evaluates the credit information of consumers who visit the website and decides whether to issue them loans.  (Id. ¶ 55).  Upgrade offers loan terms for an "Upgrade" branded loan to the consumers it decides are eligible.  (Id. ¶ 56).  Upon acceptance of those terms by the consumer, Upgrade inputs the terms into a contract and directs Cross River Bank, a state-chartered FDIC-insured bank, to fund the loan.  (Id. ¶ 57).  Soon thereafter, Cross River Bank sells the loan to Upgrade or a non-bank designee.  (Id. ¶ 58).

Upgrade then services the loan, collects the payments, and receives the interest and fees charged on the loans.  (Id. ¶ 59).  The profit on the loan is enjoyed by Upgrade, which also bears the risk of the loan being defaulted.  (Id. ¶ 60).  Additionally, Upgrade advertises, markets, solicits, underwrites, services, administers, collects, and enforces the loan product.  (Id. ¶ 61).  Cross River Bank is not involved with the loan aside from listing itself as the lender and receiving a fee for the use of its name.  (Id. ¶ 62).

2

Per the complaint, Upgrade has overcharged thousands of Pennsylvania residents millions of dollars in interest and fees above the 6% statutory cap. (Id. ¶ 63).

Plaintiffs Ken Dieffenbach and Jennifer Gammage are Pennsylvania citizens who allege that Upgrade overcharged them. (Id. ¶ 64). They both obtained Upgrade branded loans by visiting www.upgrade.com. (Id. ¶¶ 65-66). Dieffenbach's loan was in the amount of $1,785.60, and Gammage's was in the amount of $1,300.00. (Id. ¶¶ 69-70). Both plaintiffs repaid their loans, Dieffenbach at an Annual Percentage Rate ("APR") of 37% and Gammage at an APR of 33%. (Id. ¶¶ 74-75). The plaintiffs each paid hundreds of dollars more in interest beyond the statutory cap. (Id. ¶ 78).

Plaintiffs thus instituted the instant class action lawsuit on behalf of themselves and the thousands of other Pennsylvanians who were charged interest by the defendant in excess of that allowed by Pennsylvania law. (Id. ¶ 79). The complaint contains the following three counts:

1) Violation of the Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. § § 201 *et seq.*;

2) Violation of the Loan Interest and Protection Law, 41 PA. STAT. §§ 101, *et seq.*; and

3) Violation of the Consumer Discount Company Act, 7 PA. STAT. §§ 6201, *et seq.*

Plaintiffs complaint seeks the following relief: restitution in the amount of any interest, fees, or other charges Defendant Upgrade charged, collected, contracted for, or received in excess of 6%; attorneys' fees and costs; and all other relief that is necessary and proper.  (Doc. 1, ¶ 135).

In response to the plaintiffs' complaint, defendant filed a motion to dismiss and to compel individual arbitration.  The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

Plaintiffs invoke this court's jurisdiction pursuant to Class Action Fairness Act, ("CAFA"), 28 U.S.C. § 1332(d).  This statutory section provides the court with original jurisdiction "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . and is a class action in which – **(A)** any member of a class of plaintiffs is a citizen of a State different from any defendant."  Under this section of CAFA, court's generally apply state substantive law from the forum where it sits just as with ordinary diversity jurisdiction.  See Lisowski v. Walmart Stores, Inc., 552 F. Supp. 3d 519, 530 (W.D. Pa. 2021).

4

**Standard of Review**

In deciding a motion to compel arbitration, the court first determines the applicable standard of review. The standard is either the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the summary judgment standard under Federal Rule of Civil Procedure 56. Guidotti v. Legal Helpers Debt Resol., LLC., 716 F.3d 764, 772 (3d Cir. 2013).

The Third Circuit Court of Appeals has explained that "[w]hen it is apparent based on the face of a complaint, and documents relied upon in the complaint, that certain of the party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. at 776. Where, however, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability[.]" Id. After the discovery period, the court should review the motion under the summary judgment standard. Id.

In the instant case, the defendants have presented the documents upon which plaintiffs' base their claims including the borrower agreements and loan

agreements. (Doc. 6-6, 6-7, 6-8, 6-9).[2] Plaintiffs do not dispute that these are the agreements at issue which form the basis of their claims. In response to the motion to compel arbitration, the plaintiffs did not present additional evidence to place the agreement to arbitrate at issue. Moreover, the parties make legal arguments regarding whether the arbitration agreement is legally valid, not factual arguments. Accordingly, the Rule 12(b)(6) motion to dismiss standard applies to this case.

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

---

[2] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Gaur. Corp. v. White Consol. Industr., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Here, plaintiffs' claims are based upon the Borrower's Agreements and Loan Agreements attached to defendant's motion to dismiss and plaintiffs have raised no issue as to their authenticity. Therefore, the court will consider these documents in ruling upon the defendant's motion.

544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district  . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  Here, the agreements call for final binding arbitration, therefore, if the court finds that the arbitration agreements should be enforced then dismissal of the instant action is appropriate.

**Discussion**

Defendant Upgrade has filed a motion to dismiss and to compel individual arbitration.  It argues that the loan agreements at issue require any claims to be resolved individually through arbitration.   Defendant argues that in the "Borrower

Agreement" and corresponding "Loan Agreement and Promissory Note," plaintiffs both voluntarily agreed to arbitrate their claims on an individual basis when they applied for and obtained their personal loans. As an initial matter, the parties discuss a conflict of laws question. Defendant alleges that the substantive law of New Jersey applies, and plaintiff argues that Pennsylvania law applies.

As noted above, generally in a case based upon CAFA, this court would apply the substantive law of the state where it is located, that is Pennsylvania. Defendant, however, argues that New Jersey law should apply. To determine whether Pennsylvania law or New Jersey law applies to the underlying arbitration issue, the court applies Pennsylvania choice of law rules. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007). Plaintiffs argue that under Pennsylvania choice of law rules, the substantive law of Pennsylvania applies, whereas defendant argues that under Pennsylvania law, New Jersey law applies to the dispute.

The defendant argues that the Borrower and Loan Agreements contain a choice-of-law provision requiring the application of New Jersey law, except for the arbitration provisions which fall under the Federal Arbitration Act. Plaintiffs do not dispute that the agreements contain the choice-of-law provision, however,

8

they argue that under Pennsylvania choice-of-law rules, Pennsylvania law applies to the underlying dispute, not New Jersey law.

Under Pennsylvania law, "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994); Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007). The Kruzits court noted that Pennsylvania courts have adopted section 187 of the Restatement (Second) of Conflict of Laws, which provides for the enforcement of such provisions:

> unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . ..

Kruzits, 511 F.3d at 389.

The court will only address the first factor as it is dispositive. This factor is whether the chosen state, New Jersey, has a substantial relationship to the parties or the transaction. Here, defendant alleges that this case has a strong relationship to New Jersey because Cross River Bank provided/funded the loans at issue in this case and it is headquartered in New Jersey. Plaintiff, on the other hand, argues that Cross River Bank is not a party and was simply a vendor who the defendant paid for the use of its name on their loan documents. (Doc. 1, Compl. ¶¶ 6, 52-62). Defendant counters that plaintiffs cannot avoid arbitration

9

through artful pleading.  Cross River Bank was the lender here and its role was central to the transactions at issue, and thus, New Jersey has a substantial relationship with the parties and transactions per the defendant.  The plaintiffs, however, reside in Pennsylvania, and they seek to enforce Pennsylvania usury law.  (Doc. 1, Compl., ¶¶ 15, 16).  Defendant Upgrade is a corporation headquartered in California.  (Id. ¶ 17).

After a careful review, the court agrees with the plaintiff that New Jersey does not have a substantial relationship to this action.  The complaint sets forth a "Rent-A-Bank" scheme that online lenders allegedly use to disguise usury.  The complaint alleges as follows:

"Rent-a-Bank" refers to a device online lenders use to disguise usury.

Through this device, lenders structure the form of a loan transaction to make it appear as though their loans are issued by banks.

Lenders structure their loans this way in an attempt to take advantage of the exemption privileges banks enjoy under state law, as well as the preemption privileges banks enjoy under federal law. . . .

Although the "rent-a-bank" device can take many forms, it essentially involves an online lender paying a bank to identify itself as the lender in a contract associated with a loan an online lender created. ...

Other than receiving a fee to put is name on a loan contract, the bank has no real involvement in the loan transaction.

For example, the bank does not offer the online lender's loan product through its branches or websites, the bank does no decide who will obtain the online lender's product, and the bank does not, and never

intends to, hold, service, collect, enforce, or otherwise administer the online lender's product.

Instead, the online lender administers its product, decides who will receive it,  holds and services its product, and enjoys the profit, and bears the risk of loss, associated with its product.

Despite these facts, online lenders claim the banks named in their loan contracts are the lenders of their loans.

This argument inverts the anti-evasion principle, and asks courts to elevate the form of a loan transaction over its substance.

(Doc. 1, Compl. ¶¶ 31-39).

The complaint further alleges that the nerve center of the loan transaction is a non-bank, therefore, the "rent-a-bank" loans are non-bank loans because the bank has no real involvement in the transaction.  (Id. ¶ 41).  The complaint avers that Defendant engaged in a "rent-a-bank" scheme with the New Jersey bank. The bank had no real involvement in the actions giving rise to the instant lawsuit. Accordingly, the state chosen by the parties in the choice of law provision, New Jersey, has no substantial relationship to the parties or the transaction and no other reasonable basis for the parties' choice exists. The choice of law provision found in the loan documents will not be enforced by the court.  As noted above, at this point of the proceedings, the court must take the averments in plaintiffs' complaint as true and in the light most favorable to the non-movant.  Colburn, 838 F.2d at 665-66.  Taking the allegations as true, Cross River Bank, the entity

which would justify applying New Jersey law, does not have a substantial relation to the parties or the transaction.  The law of Pennsylvania will therefore apply.

The next question in this case is whether the parties should be compelled to arbitrate this dispute. The Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq.* "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010).  Both Federal and Pennsylvania state law strongly favor the enforcement of arbitration provisions.  See Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) ("It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of resolution of disputes through arbitration.' " (quoting Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003))); Dodds v. Pulte Home Corp., 909 A.2d 348, 351 (Pa. Super. Ct.2006) ("It is hornbook law that Pennsylvania favors the enforceability of agreements to arbitrate.") (citing Quiles v. Fin. Exch. Co., 897 A.2d 281, 285 (Pa. Super. Ct. 2005))).

Contracts with an arbitration clause are treated with a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " AT & T Techs., Inc. v.

Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United
Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83
(1960)).

Courts applying either Federal or Pennsylvania state law conduct the same
two part inquiry to determine the enforceability of arbitration provisions. First, the
court must determine whether "a valid agreement to arbitrate exists," and,
second, whether "the particular dispute falls within the scope of the agreement."
Kirleis, 560 F.3d at 160; see also Messa v. State Farm Ins. Co., 641 A.2d 1167,
1168 (Pa. Super. Ct. 1994).  The court will address these two arbitration issues in
turn.

**1.  Does a valid arbitration agreement exist?**

Here, the principle dispute between the parties is whether a valid and
enforceable arbitration agreement exists.  The only issue raised by the plaintiff
with regard to whether an enforceable arbitration agreement exists is that the
arbitration agreement is invalid under Pennsylvania law.  The arbitration
provisions in the Borrower Agreements and Loan Agreements waive a
constitutional right, that is, the right to a jury trial.  Plaintiffs argue that when a
party seeks to prove the waiver of a constitutional right under Pennsylvania law,
a heightened standard must be met to establish that the parties assented to the
agreement.  Defendant has not met this heightened standard regarding the

arbitration agreements, and therefore, arbitration should not be compelled. In support of their position, the plaintiffs cite to Chilutti v. Uber Tech., Inc., 300 A.3d 430 (Pa. Super. Ct. 2023)(*en banc*). Defendant, on the other hand, argues that the court should not follow Chilutti. Rather, per the defendant, pertinent federal law and the FAA support a finding that the arbitration agreements are valid. After a careful review, the court agrees with the defendant.

The court will analyze Chilutti as it is the primary case upon which the plaintiff relies. The plaintiff in Chilutti, Shannon Chilutti, suffered injuries while riding in a car provided by Uber Technologies, Inc., a transportation service company. Id. at 434. She and her husband filed a negligence suit against Uber and its subsidiaries. Id. at 435. The defendants moved to compel arbitration, arguing that "the couple's conduct on the company's website and application — when they registered for the ridesharing service — signified that they agreed to be bound by the mandatory arbitration provision found in the hyperlinked terms and conditions." Id. at 434.

In its analysis, the Chilutti court noted the "copious usage" of arbitration provisions in present day contracts and that such provisions have weakened the right to a jury trial in civil proceedings found in the Seventh Amendment to the United States Constitution. Id. at 441. The Superior Court further noted that the

14

weakening of the constitutional right to a jury trial has become greater in the

context of internet contracts where a binding arbitration agreement:

> (1) can be inconspicuous;
> (2) may be contained in a hyperlink that is separate from the binding
> action like a "click" of an "I agree to these terms" button;
> (3) may not require a party's signature to be in direct relation to the
> waiver; and
> (4) may not require that a party even review the agreement to be
> bound by it.

Id. at 442.

To help remedy the weakening of the right to a jury trial, the Chilutti Court

concluded that "a court should not enforce an arbitration provision in an Internet

purchase agreement unless the court concludes that the party agreeing to an

arbitration provision was aware that they were waiving the right" and that a

waiver ought to be "clearly described and understood to be giving up a

constitutional right to a jury trial." Id. at 442-43.

The Superior Court explained that unless a website operator can

demonstrate that the consumer had actual knowledge of the arbitration

agreement, an internet contract demonstrates an unambiguous manifestation of

assent to arbitration by:

> (1) explicitly stating on the registration websites and application
> screens that a consumer is waiving a right to a jury trial when they
> agree to the company's "terms and conditions," and the registration
> process cannot be completed until the consumer is fully informed of
> that waiver; and (2) when the agreements are available for viewing
> after a user has clicked on the hyperlink, **the waiver should not be**

> **hidden in the "terms and conditions" provision but should appear at the top of the first page in bold, capitalized text.**

Id. at 450 (emphasis added).

The Chilutti court held that "Uber's website and application did not provide reasonably conspicuous notice of the terms to which [the Chiluttis] were bound" where "the 'terms and conditions' agreement was encapsulated in tiny, blue font at the very bottom of a cluttered webpage. The relevant text was not underlined or capitalized." Id. at 449. Further, other terms and conditions could only be reviewed in small font and on the fifth screen of the registration process after the user had already provided substantive personal information. Id. "[A] stricter burden of proof is necessary to demonstrate a party's unambiguous manifestation of assent to arbitration." Id. at 449-450. The Chilutti court further explained: "This is accomplished by the following: (1) explicitly stating on the registration websites and application screens that a consumer is waiving a right to a jury trial when they agree to the company's "terms and conditions," and the registration process cannot be completed until the consumer is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the "terms and conditions" provision but should appear at the top of the first page in bold, capitalized text." Id. at 450. The court held that the no valid arbitration

agreement existed and therefore instead of arbitration, the Chiluttis were "entitled to invoke their constitutional right to a jury trial." Id. at 451

Here, a review of the agreements reveal that the jury trial waiver is not at the top of the first page in bold, capitalized text. The Borrower Agreements contain a capitalized jury trial waiver, but the font is not bold and it appears in the middle of the second page, not at the top of the first page. (Doc. 6-6, ¶ 8(h); Doc. 6-7, ¶ 8(h)). Likewise, the Loan Agreements contain capitalized language related to the jury trial waiver, located near the middle of the fourth page. (Doc. 6-8, ¶ 13(h); Doc. 6-9, ¶ 13(h)). Accordingly, it appears that under Chilutti, the arbitration clauses at issue are not valid and enforceable.

Defendant, however, argues that Chilutti is not binding on this court and is in fact preempted by federal law, the FAA. Federal courts are bound by Pennsylvania Supreme Court's interpretation of current state law according to defendant. Thus, defendant argues that Chilutti, as a Pennsylvania Superior Court opinion is not binding per se on this court.

The court agrees with the defendant. As noted above, the substantive law of Pennsylvania applies in this case. This court applies the law as set forth by the highest court of the Commonwealth, the Supreme Court of Pennsylvania. See Barradas v. Jacome v. Att'y Gen. United States, 39 F.4th 111, 124 (3d Cir. 2022). The Supreme Court of Pennsylvania, however, has not addressed the

issue presented by the parties.  Thus, the court is tasked with predicting the
manner in which the Supreme Court of Pennsylvania would rule.  The law
provides that:

> In the absence of a controlling decision by the Pennsylvania Supreme
> Court, a federal court applying that state's substantive law must predict
> how Pennsylvania's highest court would decide this case.  See
> Nationwide Mutual Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir.
> 2000).  "In predicting how the highest court of the state would resolve
> the issue, we must consider 'relevant state precedents, analogous
> decisions, considered dicta, scholarly works, and any other reliable
> data tending convincingly to show how the highest court in the state
> would decide the issue at hand.'"  Id. (quoting McKenna v. Ortho
> Pharm. Corp., 622 F.2d 657, 663 (3d. Cir. 1980).

Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 45-46 (3d Cir. 2009) (footnotes and
editing marks omitted).  The court also considers the opinions of intermediate
appellate state courts " 'unless it is convinced by other persuasive data that the
highest court of the state would decide otherwise.' "  Buffetta, 230 F.3d at 637
(quoting West v. AT & T Co., 311 U.S. 223, 237 (1940)).  Here, the Pennsylvania
Supreme Court has not ruled upon the issue before the court.  Thus, while
Chilutti may not be binding, it may be instructive to a certain degree in
determining how the Pennsylvania Supreme Court would rule.

As explained above, in Chilutti, the Pennsylvania Superior Court has
spoken directly on the issue of where the jury waiver language must be located
to be a proper waiver of the plaintiff's jury rights.  In so doing, the Superior Court
cited to relevant Pennsylvania caselaw, including that of the Pennsylvania

18

Supreme Court and the United States Supreme Court.  Additionally, the <u>Chilutti</u> court cited the constitutions of the United States and Pennsylvania.

The Pennsylvania Supreme Court, however, has explained the importance of arbitration.  The court stated:  "By now it has become well established that 'settlement of disputes by arbitration are no longer deemed contrary to public policy.  In fact, our statues encourage arbitration and with our dockets crowded and, in some jurisdictions, congested, arbitration is favored by the courts.' " <u>Com., Off. of Admin. v. Com., Pennsylvania Lab. Rels. Bd.</u>, 598 A.2d 1274, 1277-78 (Pa. 1991) (quoting <u>Flightways Corp. v. Keystone Helicopter Mgmt., LLC</u>, 331 A.2d 184, 185 (Pa. Super. Ct. 1975)).  The Pennsylvania Supreme Court has also noted that the United States Supreme Court is "unsympathetic to [a] state court's concern for the right to a jury trial" under the FAA, and that the "courts are obligated to enforce arbitration agreements as they would enforce any contract, in accordance with their terms, and may not single out arbitration agreements for disparate treatment." <u>Taylor v. Extendicare Health Facilities, Inc.</u>, 147 A.3d 490, 504, 509 (Pa. 2016).  <u>Chilutti</u> appears to run counter to law favoring arbitration that has been recognized by the Pennsylvania Supreme Court and it is therefore not clear that the Pennsylvania Supreme Court will adopt the stricter standard set forth in <u>Chilutti</u>.

Chilutti is also in conflict with the language of the FAA, which provides that arbitration agreements can be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." FAA § 2. Invalidation of arbitration clauses are thus permissible when based upon "generally applicable contract defenses" including fraud, duress, and unconscionability. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). In Chilutti, the court invalidated the arbitration clause because it did not have the jury waiver prominently displayed, not because of fraud, duress, or unconscionability.

Moreover, the United States Supreme Court has held that state courts "must abide by the FAA, which is 'the supreme Law of the Land,' U.S. CONS, ART. IV, cl. 2, and by the opinions of this Court interpreting that law." Nitro-lift Tech., LLC v. Howard, 568 U.S. 17, 21 (2012). The Supreme Court has further held that a court "may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." Dr.'s Assocs, Inc. v. Casarotto, 517 U.S. 681, 687 (1996). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022). Under the FAA, courts must treat arbitration agreements on "equal footing" with other types of contracts, and rules applicable only to arbitration "or

20

that derive their meaning from that fact that an agreement to arbitrate is at issue"
are improper.  AT&T Mobility LLC v. Concepion, 563 U.S. 333, 339 (2011).

The precedential effect of Chilutti is uncertain.  The decision is not final
because the Pennsylvania Supreme Court granted Uber's petition for allowance
of appeal on August 27, 2024.  See Chilutti v. Uber Techs., Inc., 325 A.3d 446
(Pa. 2024) (Table).  A review of the docket indicates that the Pennsylvania
Supreme Court has not yet ruled upon the merits of the appeal.  Chilutti treats
arbitration contracts differently from other contracts in that it requires the bold
faced notice on the top of the front page regarding the waiver of right to a jury
trial.[3]  This is contrary to the FAA and United States Supreme Court law and
conflicts with the policy favoring arbitration as explained by the Pennsylvania
Supreme Court.  Therefore, the court affords little weight to Chilutti as it is
contrary to the FAA and United States Supreme Court precedent.

In considering how the Pennsylvania Supreme Court would rule on the
issue, the court finds it would rule in conformity with the supreme law of the land,
the FAA, and cases interpreting the FAA, as discussed above, and it would hold

---

[3] It may be argued that arbitration agreements are treated like all other contracts which waive
the right to a jury trial.  Chilutti, however deals with arbitration agreements and the parties have
cited to no other cases where the court applied this limitation on a contract waiving a jury trial
aside from an arbitration agreement.  The Chilutti court discussed the waiver of jury right, and
other constitutional rights in the context of criminal matters, but criminal cases always involve
the government as a party.  Such cases are not easily compared to contracts between private
parties.

that the waiver need not be placed at the top of the first page in bold print and in capitalized text. See, e.g., Happy v. Marlette Funding, LLC, 744 F. Supp. 3d 403, 412 (W.D. Pa. 2024) (explaining that the Chilutti court's justification for applying a stricter standard to arbitration agreements is flawed). This is the only basis on which the plaintiff seeks to challenge the validity of the arbitration agreements. Because this challenge fails, the court finds that the arbitration agreements are valid and enforceable.

**2. Does the dispute fall within the arbitration agreement?**

The only other issue is whether the dispute falls within the arbitration clauses. As noted above, the arbitration clauses at issue provide that "either you or Bank or its service provider Upgrade (or any subsequent assigns of the foregoing), may at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section." (See, e.g., Doc. 6-8, ¶ 13(a)). Plaintiffs' causes of action regarding whether the agreements charge an excess amount of interest and/or fees falls within the broad language of the agreements and the plaintiff does not argue otherwise. Thus, the dispute falls within the arbitration agreement.

As the court has concluded that valid arbitration agreements exist and the dispute falls within those clauses, then the clauses are enforceable and the defendant's motion to compel arbitration will be granted.

22

One final issue remains. Plaintiffs seek to represent a class of individuals. Thus, the question of the scope of the arbitration is present. The law provides that the FAA may not compel a party to submit to class arbitration "unless there is a contractual basis for concluding that the party *agreed* to do so." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010) (emphasis in original). Thus the court may not order such arbitration on a class-wide basis if the agreement is silent or if the agreement excludes class-wide arbitration. Here, the arbitration agreements indicate that arbitration shall not proceed on a class or collective basis. (Doc. 6-6, ¶ 8(f); Doc. 6-8, ¶ 13(f)). Accordingly, the court is without authority to order classwide arbitration. Thus, the arbitration shall be compelled to the individually named plaintiffs. An appropriate order follows.

Date: 4/29/25

JUDGE JULIA K. MUNLEY
United States District Court